Susan W. REDIKER et al., Plaintiffs,

v.

GEON INDUSTRIES, INC., et al., Defendants.

No. 75 Civ. 2438 (VLB).

United States District Court, S. D. New York.

Nov. 22, 1978.

---

Finley, Kumble, Wagner, Heine & Underberg, New York City, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Geon Industries, Inc., George O. Neuwirth and Frank Bloom.

Borden & Ball, New York City, for defendants Roy Alpert and Irving Alpert.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

#### I. *Introduction*

This action was commenced by plaintiff in the United States District Court for the Northern District of Alabama, Southern Division. Pursuant to 28 U.S.C. § 1404(a), the case was transferred to the Southern District of New York.

After transfer plaintiff filed a motion seeking authorization for the action to be maintained as a class action. That motion was opposed, and cross-motions were filed to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. Plaintiff then moved for leave to file an amended and supplemental complaint, and defendants, asserting that the new proposed complaint also failed to state a claim upon which relief could be granted, opposed plaintiff's motion.

On September 28, 1976, this Court per MacMahon, J. filed a Memorandum Opinion granting leave to amend the complaint. That order rendered moot defendants' motion to dismiss and plaintiff's motion for class action determination since both motions had been addressed to the earlier pleading.

Plaintiff has now served and filed her Amended and Supplemental Complaint (hereinafter the "complaint"), and she has moved for class action certification pursuant to Rule 23(c), Fed.R.Civ.P. Plaintiff has defined the relevant class as "all persons other than defendants named herein who were beneficial owners of Geon stock at that time on February 22, 1974 when trading on the American Stock Exchange was suspended and who were record owners of Geon stock as of the close of business on June 14, 1974." Complaint ¶ 15. Various of the defendants have filed cross-motions to dismiss the complaint for failure to state a claim upon which relief can be granted.[1]

#### II. *Conclusion*

For the reasons set forth below, defendants' motions to dismiss the complaint are granted as to so much of the complaint as alleges individual claims by plaintiff and, except as to the Section 16(b) claim against defendant James McMahon, see pp. 82–83 *infra,* as to so much of the complaint as alleges derivative claims on behalf of defendant Geon Industries, Inc. As to so much of the complaint as alleges claims on behalf of the class proposed by plaintiff, defendants' motions to dismiss are denied without prejudice. Action on plaintiff's motion for class action certification is suspended pending submission by the parties of further memoranda on that motion. Such memoranda are to be prepared in light of the dispositions announced in this order.[2]

1. Defendants Edwards & Hanly and Marvin Rauch have not joined in these motions. However, my disposition of the pending motions requires dismissal of this action against these non-moving defendants as well. Defendant James McMahon has not answered the complaint. However, with the exception of the Section 16(b) claim, the complaint must be dismissed as against McMahon as well. *But see Conclusion, infra,* and note 2, *infra.*

2. Such memoranda are to be submitted by all parties on or before December 18, 1978. Answering memoranda are to be submitted on or before December 28, 1978.

My reasons for disposing of this matter in this way at this time are as follows. The conduct of several of the defendants of which plaintiff complains has already been determined to have been violative of the federal securities laws. *See SEC v. Geon Industries, Inc.,* 381 F.Supp. 1063 (S.D.N.Y.1974) (finding Rule 10b–5 violations and enjoining certain defendants), *aff'd in part, rev'd in part and remanded,* 531 F.2d 39 (2d Cir. 1976). However, for various technical reasons to be discussed below, plaintiff cannot state a claim based on defendants' conduct in her role as individual plaintiff or in her role as derivative plaintiff. Nonetheless, there may be members of the pro-

## III. *Discussion*

For purposes of the motion to dismiss, the facts alleged in the complaint will be taken as undisputed. The facts are set forth, in substance, below. They relate to the proposed acquisition of the assets of Geon Industries, Inc. ("Geon") by Burmah Oil Co., Ltd. ("Burmah").

Plaintiff Susan W. Rediker presently owns 100 shares of Geon common stock, having purchased 200 shares on July 23, 1973 and having sold 100 of those shares on February 20, 1975. Plaintiff brings this action in the purported dual capacity of class representative seeking damages from Geon and the other defendants, and derivative plaintiff seeking relief on behalf of Geon. She purports to represent a class consisting of all persons, other than the defendants, who owned Geon stock on February 22, 1974 when trading on the AMEX was suspended and who were owners of Geon stock on June 14, 1974.

Defendant Geon is a New York corporation whose stock is registered on the American Stock Exchange ("AMEX") pursuant to § 12(b) of the Securities Exchange Act of 1934 ("Exchange Act").[3]

Defendant George O. Neuwirth, the founder of Geon, is its chief executive officer and chairman of its board of directors. He owns or is voting trustee with respect to approximately 581,000 shares of Geon common stock, which constitutes some 29 per cent of the total common stock outstanding. Defendant Frank Bloom is the secretary-treasurer and financial vice-president of Geon. Defendant McMahon was during times pertinent to this litigation the comptroller of Geon Intercontinental, Inc. ("Intercontinental"), a wholly owned subsidiary of Geon. McMahon had overall responsibility for the accounting department of Intercontinental and helped Bloom in the preparation of Geon's financial statements and reports. Defendant Roy Alpert is a close friend of defendant Neuwirth. Defendant Irving Alpert is a brother of Roy Alpert and is a partner of his brother in a real estate business. Defendant Edwards & Hanly is a broker-dealer in securities and a member of AMEX. Defendant Marvin Rauch was during times pertinent to this litigation a registered representative employed by Edwards & Hanly. Defendant Arthur Andersen & Company is a national accounting firm which provided all outside accounting services for Geon.

In the summer of 1973, Geon commenced discussions with Burmah concerning the possible merger of the two companies. During September, October and November of 1973, defendant Neuwirth tipped defendants Rauch and Roy Alpert, and apparently tipped others, as to the ongoing Geon-Burmah discussions. Shortly thereafter all of the individual defendants were engaged in widespread tipping of friends and relatives. With the exception of Neuwirth and Bloom, all of the individual defendants, along with the tippees' friends and relatives, purchased Geon stock on the basis of their knowing of the brewing Geon-Burmah deal, which constituted knowledge of non-public inside information.

posed class who can state a claim on the basis of defendants' conduct. *See* note 13, *infra.* Therefore, consideration of defendants' motion to dismiss the complaint insofar as such complaint purports to allege class claims and consideration of plaintiff's motion for class certification must await further briefing by the parties in light of the disposition of the case made in this order.

The parties' memoranda should address, among other questions, the following: (1) Does the dismissal granted herein require dismissal of the class claims? (2) If not, may plaintiff continue to act as class representative? (3) If plaintiff may not continue to act as class representative and if the dismissal granted herein does not require dismissal of the class claims, how should prosecution of the class claims proceed? (4) If the dismissal granted herein does require dismissal of the class claims, what problems, in terms of the statute of limitations, are faced by those class members who have potentially viable claims? The parties should give consideration to the possibility that the members of the class proposed by plaintiff who do have potentially viable claims may in fact constitute one or more sub-classes of the class proposed—i. e., perhaps those who purchased or sold securities during the period covered by the complaint, or some portion thereof.

**3.** 15 U.S.C. § 78*l*(b).

Public disclosure concerning the preliminary discussions between Geon and Burmah was not made until December, 1973. On December 21, 1973, Geon announced that it had reached a written agreement in principle with Burmah whereby Geon was to be acquired by Burmah for $36,000,000, or approximately $16.80 per share. Even after the fact of the prospective acquisition of Geon by Burmah had been made public, non-public inside information concerning the details of the prospective merger continued to be passed on, through February 22, 1974, to the same group of defendants' friends and relatives.

On February 15, 1974 a Geon board of directors' meeting was scheduled for February 21, 1974. The proposed purpose of the meeting was formally to approve the agreement in principle that had been announced December 21, 1973. By February 21, Neuwirth, Bloom, McMahon and the other individual defendants knew or should have known that Geon's pre-tax earnings would be reduced by at least $314,000 for an item improperly reflected in 1973 income. They had also learned that preliminary figures indicated that for the year 1973 Geon income would be some 29% less than had been expected and substantially less than had been previously announced to the public.

On February 21 Geon's board of directors decided to postpone the signing of the agreement with Burmah. Another Geon board meeting was scheduled for February 24. Late on February 21 or early on February 22 McMahon called Rauch, who entered sell orders for all of McMahon's Geon stock, to be processed when the AMEX opened on the morning of February 22, 1974. Rauch also entered sell orders on behalf of himself, his relatives, his friends and various other clients. These orders were executed by Edwards & Hanly on the AMEX. Neuwirth had informed the Alperts of the situation, and the Alperts had sell orders representing approximately one-half of their holdings awaiting execution when the AMEX opened on the morning of February 22, 1974.

All of these sell orders (approximately 46,000) created a severe imbalance with respect to Geon stock when the AMEX opened on February 22. The AMEX delayed opening the market in Geon stock, and an AMEX official called defendant Bloom to inquire whether Geon had any explanation for the large number of sell orders. Bloom responded that Geon had no material non-public information on recent developments to account for the influx of sell orders. As the result of this misrepresentation, the market in Geon stock was opened on February 22 at 10:33 a. m. Various insiders and their "tippees" promptly sold their Geon stock, and the price declined on heavy volume from approximately $14.38 to approximately $11.80 per share. Pursuant to a request from counsel for Geon, the AMEX halted trading at 11:19 a. m.

On March 15, 1974 Geon announced that it had reached a revised agreement in principle with Burmah, by which Burmah would purchase Geon for $13.00 per share, a price down from the originally agreed price of $16.80 per share.

On June 3, 1974 the *Wall Street Journal* reported that Geon said it expected the agreement for its sale to Burmah would be carried out on June 4 for slightly under $24,000,000, or $10.75 per Geon share. On July 2, 1974 the Geon-Burmah deal was approved by Geon stockholders at their annual meeting.

A proxy statement circulated to secure approval of the Geon-Burmah deal contained material misstatements of fact and material omissions. Burmah, confronted with the illegal activities of Geon's insiders and the pendency of a Securities and Exchange Commission complaint against Geon, Neuwirth, Bloom, McMahon, Edwards & Hanly, Rauch and the Alperts based upon their activities in connection with the anticipated Geon-Burmah deal, notified Geon on July 12, 1974 that Burmah did not intend to consummate the planned purchase of Geon.

Geon stock remained subject to the February 22nd AMEX stop-trade order through July 24, 1974, with the exception that trading was reopened from June 10 through June 28, 1974. When trading reopened on July 24, Geon stock was selling for $3.00 per

share, and the stock has not subsequently exceeded that price.

On the foregoing factual scenario, plaintiff predicates nine causes of action. The first counts charge all defendants with violating Sections 10(b),[4] 14(a),[5] and 14(e)[6] of the Exchange Act. In the fourth cause of action Edwards & Hanly is charged with violation of Section 15 of the Exchange Act.[7] In the fifth count Neuwirth and McMahon are alleged to have violated Section 16 of the Exchange Act.[8] Neuwirth,

4. 15 U.S.C. § 78j(b). Section 10 provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*    \*    \*    \*    \*    \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

5. 15 U.S.C. § 78n(a). Section 14(a) provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

6. 15 U.S.C. § 78n(e). Section 14(e) provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

7. 15 U.S.C. § 78o. Section 15 provides in relevant part:

(b)(4) Any provision of this chapter (other than section 78e of this title and subsection (a) of this section) which prohibits any act, practice, or course of business if the mails or any means or instrumentality of interstate commerce are used in connection therewith shall also prohibit any such act, practice, or course of business by any broker or dealer registered pursuant to this subsection or any person acting on behalf of such a broker or dealer, irrespective of any use of the mails or any means or instrumentality of interstate commerce in connection therewith.

\*    \*    \*    \*    \*    \*

(c)(1) No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, by means of any manipulative, deceptive, or other fraudulent device or contrivance. . . .

(c)(2) No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, in connection with which such broker or dealer engages in any fraudulent, deceptive, or manipulative act or practice, or makes any fictitious quotation. . . .

8. 15 U.S.C. § 78p. Section 16 provides in relevant part:

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, . . . irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit

Bloom and Geon are charged in a sixth cause of action with liability as control persons under Section 20 of the Exchange Act.[9] The seventh, eighth and ninth counts set forth common law claims against all of the named defendants for misuse of corporate information, tortious interference with the business and contractual relationship between Geon and Burmah, and breach of fiduciary duty owed by the defendants to Geon and the plaintiff.

These claims will be considered *seriatim*.

## IV

*Section 10(b) Claim*

The first claim by plaintiff raises the question of whether or not a target corporation or its shareholders can establish a private cause of action for money damages under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated pursuant thereto[10] where (1) the officers and directors of that target corporation have engaged in conduct which would be proscribed by Section 10(b) and Rule 10b–5 if such conduct took place in connection with the purchase or sale of securities and where (2) the conduct has resulted in the aborting of the planned takeover.

Plaintiff here has shown no purchase or sale or contract to purchase or sell, either by plaintiff or by the corporation.

■ Plaintiff's original purchase of 200 shares of Geon stock occurred in July, 1973, and her sale of 100 of those shares occurred in February, 1975. Thus, her purchase and sale of stock occurred outside the period during which defendants' allegedly illegal conduct occurred, and, accordingly, such purchase and sale cannot ground recovery herein because they were not made "in reliance upon" the allegedly illegal conduct. *See, e. g., Haberman v. Murchison,* 468 F.2d 1305, 1311 (2d Cir. 1972).

The Geon-Burmah deal was structured as an asset purchase by Burmah and a subsequent liquidation by Geon. The economic realities of the proposed transaction were that Burmah would have received Geon assets in exchange for which Geon shareholders would have received cash. The assets that Burmah would have received would have consisted solely of the securities of Geon's wholly owned subsidiary, Intercontinental.

■ Plaintiff asserts that the approval of the Geon-Burmah deal by Geon shareholders constituted a contract to purchase or sell securities and that such a contract is a

---

shall be brought more than two years after the date such profit was realized. . . .

**9.** 15 U.S.C. § 78t. Section 20 provides:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

(b) It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

(c) It shall be unlawful for any director or officer of, or any owner of any securities issued by, any issuer required to file any document, report, or information under this chapter or any rule or regulation thereunder

without just cause to hinder, delay, or obstruct the making or filing of any such document, report or information.

**10.** 17 C.F.R. § 240b–5. Rule 10b–5 reads as follows:

§ 240.10b–5 Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

purchase or sale for purposes of Section 10(b) under Section 3(a) of the Exchange Act.[11] Although it is true that a contract to purchase or sell constitutes a purchase or sale for Section 10(b) purposes, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750–51, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), I do not agree that the shareholders' approval constituted a contract to purchase or sell securities. Plaintiff and the other Geon shareholders did not obtain contractual rights merely by approving the Geon-Burmah deal. Such contractual rights would not have arisen until the Geon-Burmah deal was consummated. *See Geon Industries, Inc., et al. v. Burmah Oil Company, Ltd.*, No. 11953/74 (Sup.Ct.N.Y.Co.) (Geon shareholders held to lack capacity to bring a breach of contract suit against Burmah). *Cf. Vine v. Beneficial Finance Co., Inc.*, 374 F.2d 627, 634 (2d Cir.) (stockholder, whose stock had, in effect, been converted by short form merger process into claim for cash, was "seller" for 10b–5 purposes; court notes that question would be different if stockholder rejected fraudulent offer and remained stockholder in existing corporation), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

In reality plaintiff complains of the loss of what she perceives to have been an advantageous merger possibility, and not of a fraud in connection with the purchase or sale of securities. Plaintiff does not satisfactorily explain how the defendants' fraudulent conduct related to any investment decision made by her in connection with a purchase or sale of a security or a contract for the purchase or sale of a security. *See, e. g., Haberman v. Murchison, supra*, 468 F.2d at 1311 (10b–5 affords protection "only to those who actually purchase or sell securities to their loss in reliance upon the withholding or misrepresentation of material information or other manipulative or deceptive devices.").

■ Thus plaintiff is compelled to rely on her alternative argument to the effect that since Geon's assets were themselves securities, Geon itself was a proposed seller of securities to Burmah, and this is sufficient to satisfy the "purchase or sale of securities" requirement. However, plaintiff nowhere alleges how Geon was defrauded or otherwise injured by defendants' conduct. *See Haberman v. Murchison, supra*, 468 F.2d at 1311 (10b–5 affords protection "only to those who actually purchase or sell securities *to their loss* in reliance upon the withholding or misrepresentation of material information" (emphasis added)). In fact, if the deal had been consummated notwithstanding the erroneous financials, Burmah would have been the party defrauded. Geon and its shareholders would have enjoyed the fraudulent fruits.[12]

11. 15 U.S.C. § 78c(a).

12. One other Rule 10b–5 theory that is suggested, although not explained by, plaintiff, is that defendants are liable under the principles of *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) *(en banc), cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). *See* Affidavit of Jeffrey A. Fillman of October 20, 1976, ¶ 6. Plaintiff's suggested argument seems to be that under the principles of *Texas Gulf Sulphur*, defendants were required either to abstain from trading or to disclose the material inside information; defendants' failure to abstain or disclose constituted a 10b–5 violation.

However, plaintiff's suggested argument is not compelling at this stage of the litigation. First, insofar as the *Texas Gulf Sulphur* principles give rise to an enforcement action for injunctive relief by the SEC, such an action has already been commenced and concluded. *See SEC v. Geon Industries, Inc.*, 381 F.Supp. 1063 (S.D.N.Y.1974) (finding 10b–5 violations and enjoining certain defendants), *aff'd in part, rev'd in part and remanded*, 531 F.2d 39 (2d Cir. 1976). Second, this is not a case like *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), *cert. denied sub nom. Singer v. Goldberg*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), wherein the corporation itself was involved in a purchase or sale of securities in connection with the alleged 10b–5 violation. Thus plaintiff here may not maintain a 10b–5 derivative action on the basis of the principles of that case. Third, the Second Circuit opinion in *Texas Gulf Sulphur* regarding remedies, *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971), which suggests that under certain circumstances, the corporation may recover the insider's ill-begotten profits, 446 F.2d at 1307–1308, does not provide plaintiff here with a basis for a 10b–5 derivative action. For, in this respect, the instant case is governed by the more recent Second Circuit case, *Haberman v.*

█ I hold that plaintiff cannot establish a cause of action under Section 10(b) or Rule 10b–5 since the corporation engaged in no purchase or sale of securities in the relevant sense and since plaintiff herself engaged in no purchase or sale of securities. More than twenty-five years ago, the Second Circuit in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), held that only actual purchasers and sellers of securities can maintain a private damage action under Section 10(b) and Rule 10b–5. In a recent case, the Supreme Court has specifically affirmed the *Birnbaum* holding. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).[13]

*Section 14(a) Claim*

The substance of plaintiff's claim under Section 14(a) is that Geon issued a false and misleading proxy statement in order to secure approval by Geon's shareholders of the Geon-Burmah deal. Plaintiff alleges that on the basis of that proxy statement, she

*Murchison*, 468 F.2d 1305 (2d Cir. 1972). There the court stated that, under federal law, there is no right in the corporation to recover profits from insiders who have used inside information to their own advantage:

Appellant's reliance on *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968), *(en banc), cert. denied, Coates v. Securities and Exchange Commission*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), to support his Rule 10b–5 claim is misplaced. The liability of insiders in that case was firmly predicated on the view that the paramount purpose of Section 10(b) and Rule 10b–5 was to protect purchasers and sellers of securities from those who deal unfairly with them. *See* 401 F.2d at 847–852. On appeal from the remand in that case, this court upheld the remedy afforded by the District Court, under the terms of which the defendants were required to make restitution of their profits by payments into an escrow fund from which those who were able to demonstrate loss from the defendants' actions would be compensated. *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). While it is true that we also upheld the provision that the undistributed balance of the fund would, after five years, be distributed to the corporation—in effect, a conditional recovery for the corporation—we did so principally in deference to the District Court's broad discretion

and other shareholders of Geon refrained from selling Geon stock prior to a drop in the market price of that stock.

█ Section 14(a) was designed "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). Accordingly, a damage claim under Section 14(a) must arise out of corporate action taken pursuant to a proxy statement. *E. g., Robbins v. Banner*, 285 F.Supp. 758, 761–63 (S.D.N.Y.1966) (where alleged proxy violation had no causal connection with damage claimed, complaint did not state cause of action under Section 14(a)); *Hoover v. Allen*, 241 F.Supp. 213, 230 (S.D.N.Y.1965) ("In the absence of some allegation of infringement upon corporate suffrage rights or some corporate action taken as a result of such infringement, no cause of action under Section 14(a) has been made out.").

under the Act to fashion a remedy most equitable under the circumstances. In approving that conditional remedy, we recognized, first, the inequity of permitting the defendants to retain the proceeds of their own wrong, and, second, that the corporation may itself have suffered injury to its integrity and reputation by the wrongful actions of the defendants. 446 F.2d at 1307–1308.

These considerations, however, should not obscure the fact that the essence of the 10b–5 *violation in Texas Gulf Sulphur* was the wrong done by the defendants to sellers on the open market not privy to the same material information. While there may be a parallel right, under state law, in the corporation to recover profits from insiders who use inside information to their own advantage, *see Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), there is no such derivative right under federal law. *Id.* at 1312 (emphasis in original).

Absent such a federally created right in the corporation, plaintiff cannot maintain a derivative action for the recovery of any profits defendants obtained by means of their Rule 10b–5 violations.

13. It is possible, however, that some members of plaintiff's proposed class can satisfy the *Birnbaum* requirement. *See* note 2, *supra.*

■ No such corporate action is here alleged.[14] The Geon-Burmah deal was never consummated. Thus any alleged misstatements or omissions in the proxy statement could not have injured plaintiff in her rights of corporate suffrage. The requisite "loss causation" component of a Section 14(a) claim is, therefore, absent. *Compare Walner v. Friedman*, 410 F.Supp. 29, 32 (S.D.N.Y.1975) (no "loss causation" shown where any alleged damage would flow from breach of fiduciary duty rather than from any shareholder vote obtained via false proxy solicitation materials), *with Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381–83 (2d Cir. 1974) (plaintiff sufficiently alleged loss causation by alleging that there was an unfair merger ratio, undisclosed in the proxy materials, by which he obtained fewer shares than he would have if defendants' manipulative scheme had been revealed), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

*Section 14(e) Claim*

■ Plaintiff's claim under Section 14(e) presents two fundamental issues:

(1) Do the transactions in suit constitute a "tender offer" as that term is used in the Exchange Act?

(2) Can plaintiff establish a causal connection between a fraudulent tender offer and the loss allegedly sustained? Because I answer the latter question in the negative, I do not reach the difficult issue of whether an arrangement structured as an asset sale and an immediate liquidation by the selling corporation constitutes a tender offer.

A 14(e) claim sounds in fraud. *See Electronic Specialty Co. v. International Controls Co.*, 409 F.2d 937, 940 (2d Cir. 1969) (Section 14(e) "applies Rule 10b–5 both to the [tender] offeror and to the opposition").

Plaintiff must show that there was a misrepresentation upon which she and other target shareholders relied and that this reliance was in fact the cause of their injury. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 373 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). The facts as alleged herein do not establish that the Geon shareholders' reliance on the alleged misrepresentation was the cause of the shareholders' injury. Misdeeds by the defendants may have caused Burmah to abort the deal, and this, in turn, may have caused the market price of Geon to plummet and may have thereby injured plaintiffs. Thus, the alleged injury was caused by the aborting of the deal and not by the shareholders' reliance on defendants' alleged misrepresentations.[15] Plaintiff's remedies, if any, lie in state court for common law claims. *See, e. g., Iroquois Industries, Inc. v. Syracuse China Corp.*, 417 F.2d 963, 969 (2d Cir. 1969) ("The remedy in many cases may be found in the state courts") (dictum), *cert. denied*, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

*Section 16 Claim*

This claim is asserted against only defendants Neuwirth and McMahon. Which provision or provisions of Section 16 these defendants are alleged to have violated is unclear. The complaint does not allege failure to make any filings pursuant to Section 16(a), nor does the complaint allege short sales or failures to deliver under Section 16(c). I assume therefore that plaintiff's claim is grounded upon the short-swing trading provisions of Section 16(b).

■ Section 16(b) proscribes insider trading by officers, directors, or beneficial own-

---

14. *Shareholder approval of the Geon-Burmah deal is insufficient to satisfy the corporate action requirement of Section 14(a). See Haberman v. Murchison*, 331 F.Supp. 180, 187–88 (S.D.N.Y.1971) (allegation that, but for false proxy statement, defendants would not have been elected directors and hence would not have obtained disputed premium "fails to add up to proximate causation for corporate action or damage to the corporation"), *aff'd*, 468 F.2d 1305 (2d Cir. 1972).

15. Moreover, plaintiff has not stated a viable derivative claim under Section 14(e) because the alleged reduction in the market price of Geon stock is an injury to the shareholders and not to the corporation itself. *See Sargent v. Genesco, Inc.*, 492 F.2d 750, 765 (5th Cir. 1974).

ers of the issuer.[16] Defendant Neuwirth bears such a relationship to the issuer (Geon). However, no proscribed purchases and sales or sales and purchases within a 6-month period are alleged to have been engaged in by Neuwirth. Accordingly, the claim must be dismissed as against Neuwirth.

McMahon is alleged to have purchased Geon shares during a period from October 1973 until December 1973 and to have sold those holdings on February 22, 1974. However, whether or not McMahon is an "officer" of the issuer within the meaning of Section 16(b) is not clear at this time. *See, e. g., Lockheed Aircraft Corp. v. Campbell*, 110 F.Supp. 282 (S.D.Cal.1952). The difficulty with resolving this issue is aggravated by the fact that McMahon has never answered the complaint or submitted any memorandum on this issue. Therefore, I shall suspend action on the Section 16(b) claim against McMahon pending the receipt of memoranda on this issue.[17]

*Miscellaneous Claims*

■ In light of my disposition of plaintiff's claims pursuant to Sections 10(b), 14(a), 14(e), and 16, plaintiff's Section 15 and Section 20 claims must fall.[18] Upon dismissal of plaintiff's securities law claims, the common law claims asserted pursuant to pendent jurisdiction are also dismissed in the exercise of discretion.[19] *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Iroquois Industries, Inc., supra*, 417 F.2d at 970–71.

SO ORDERED.

---

**16.** *See* note 8, *supra*.

**17.** Such memoranda are to be submitted in accordance with the schedule set forth in note 2, *supra*.

**18.** *But see* notes 2 and 13, *supra*.

**19.** *But see* notes 2 and 13, *supra*.