Harry LEWIS, Alfred B. Reiss, Carola Gruen, as Executrix of the estate of her late husband, Theodore Gruen, Ira Barmak and Colonial Securities Corporation, Plaintiffs,

v.

Harold W. McGRAW, Jr., John L. McGraw, Daniel F. Crowley, Peter O. Lawson-Johnston, Kay K. Mazuy, William J. McGill, Gordon W. McKinley, Alan J. Pifer, Louis Putze, Howard S. Tuthill, James E. Webb, Vernon R. Alden, George R. Webster and McGraw-Hill, Inc., Defendants.

No. 79 Civ. 0552.

United States District Court,
S. D. New York.

Nov. 30, 1979.

Kass, Goodkin, Wechsler & Labaton by Stuart D. Wechsler, Robert I. Harwood, Mordecai Rosenfeld, New York City, lead counsel for plaintiffs.

Wachtell, Lipton, Rosen & Katz by Herbert M. Wachtell, Douglas S. Liebhafsky, Theodore N. Mirvis, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Defendants in this action have moved for an order, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint for lack of jurisdiction over the subject matter and/or for failure of the federal claims alleged to state a claim upon which relief can be granted. Defendants also have moved, in the alternative, for an order staying the action pending disposition of parallel state-court actions.

The five named plaintiffs originally commenced separate class actions against the defendants. Following defendants' motion to dismiss each of the five complaints, plaintiffs served and filed a consolidated amended complaint. By stipulation among all parties, defendants' motion to dismiss was deemed addressed to the new complaint.

Plaintiffs, shareholders of defendant McGraw-Hill, Inc. (McGraw-Hill), allege in their consolidated amended complaint that defendants violated Section 14(e) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(e), in connection with a proposed tender offer by the American Express Company (AMEXCO) for the common

stock of McGraw-Hill. The individual defendants in this action are directors of McGraw-Hill. The series of events leading to the alleged violation of Section 14(e) began on January 8, 1979, when AMEXCO publicly proposed to McGraw-Hill a friendly business combination on the basis of AMEXCO's acquisition of 49% of McGraw-Hill's outstanding securities at $34 per share. Plaintiffs allege that the price per share initially offered by AMEXCO was a substantial premium over $26, the market price of the common stock prior to the proposed AMEXCO offered. Soon thereafter AMEXCO increased its proposed offer to $40 per share for all of McGraw-Hill's shares. In connection with these proposed offers, AMEXCO filed a Schedule 14D–1 with the Securities and Exchange Commission.

Plaintiffs allege that defendants refused to negotiate with AMEXCO and "embarked on an unlawful, improper and illegal plan, scheme and conspiracy to obstruct, delay and defeat the proposed AMEXCO offer." In particular, plaintiffs allege that defendants made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent and deceptive acts and practices, as follows:

1) Defendants announced that the proposed tender offer price of $40 per share was inadequate, although they allegedly knew that the price was fair. Plaintiffs allege that defendants had no genuine basis for believing that the McGraw-Hill stock was worth more than $40 per share.

2) Plaintiffs allege that defendants challenged the integrity and honesty of AMEXCO, publicly challenged the legality of the proposed tender offer, and publicly stated that the proposed tender offer somehow threatened freedom of expression. Plaintiffs maintain that these statements were false and misleading, especially since defendants omitted to advise its shareholders that McGraw-Hill had earlier advised AMEXCO that McGraw-Hill considered AMEXCO to be a proper and desirable merger partner.

3) Plaintiffs allege that defendants circulated a letter which McGraw-Hill had sent to AMEXCO, characterizing the proposed merger as "reckless," "illegal," and "improper."

4) Plaintiffs allege that defendants denied the plaintiff class the opportunity to sell their McGraw-Hill stock at a large premium.

Plaintiffs allege that the tender offer would have been consummated had defendants provided its shareholders and the public with complete and truthful information about AMEXCO and its proposed tender offer. Instead, defendants rejected the AMEXCO $40 per share proposed offer on January 31, 1979. Plaintiffs allege that defendants violated their statutory and common law fiduciary duties by thwarting the proposed AMEXCO tender offer improperly and illegally.

*Conduct "In Connection With" A Tender Offer*

Section 14(e) provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

■ The sole purpose of the Williams Act of 1968, which added Section 14(e), "was the protection of investors who are confronted with a tender offer." *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977). Thus, " '[t]he purpose of the Williams Act is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information.' " *Id.* (quoting *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975)).

The Supreme Court has repeatedly cautioned that "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring), *quoted in Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). The critical phrase in Section 14(e) is "in connection with any tender offer." The issue is whether or not the conduct alleged by plaintiffs to have violated Section 14(e) was "in connection with any tender offer." In the case at hand, it appears indisputable that no tender offer ever existed; all that occurred was a "proposed" tender offer by AMEXCO.

The standards to be applied in determining whether conduct is "in connection with a tender offer" were set forth by this court in *Applied Digital Data Systems, Inc. v. Milgo Electronic Corp.*, 425 F.Supp. 1145 (S.D.N.Y.1977). The court in *Applied Digital* held that when "a public announcement of a proposed offer has been made, the very dangers that the Act was intended to guard against come into play, and the application of sections 14(d) and 14(e) is thus appropriate." *Id.* at 1155 [footnote omitted]. The court explained that "[t]here is no apparent reason why any given action may not be taken 'in connection with' a development reasonably certain to take place in the future or why a recommendation to reject a proposed tender offer is not also a recommendation to 'reject a tender offer.'" *Id.* at 1153. In a critical passage, the *Applied Digital* court reasoned that:

> [To] confine the disclosure and fair-play provisions of the Act to the period after an offer has been formally made, would obviously frustrate the express remedial purposes of the statute. Indeed, it would be anomalous were sections 14(d) and 14(e) not applicable to the offeror or target corporation once a public announcement of an imminent tender or exchange offer was made, for numerous misstatements, omissions and half-truths could be promulgated with relative impunity until the offer was actually filed with and approved by the SEC. Although the shareholders might not in the pre-offer period be faced with a present decision whether to exchange their stock in the target corporation, statements and actions of the target corporation and offeror during this period clearly have the capacity to affect any future decision and should thus fall within the purview of the statute.

*Id.* at 1154 (footnote omitted).

■ This court has subsequently indicated that *Applied Digital* allows a Section 14(e) action only where the prospective offeror has made a public announcement of a proposed tender offer and has established a clear and definite intent to make a tender offer. *Reserve Management Corp. v. Anchor Daily Income Fund, Inc.*, 459 F.Supp. 597, 608 (S.D.N.Y.1978). In the case at hand the facts, as alleged by plaintiffs, suggest that AMEXCO had indeed made a public announcement of its proposed tender offer. Moreover, the facts alleged by plaintiffs appear sufficient to establish a clear and definite intent on the part of AMEXCO to make a tender offer. Plaintiffs have alleged statements and actions by defendants which clearly would have had the capacity to affect any future decision by stockholders in a tender offer. Thus, Section 14(e) should apply to statements and actions made by defendants.

■ Defendants suggest that the doctrine of *Applied Digital* should be limited to only those cases where injunctive relief is sought in the face of an immediate and threatened tender offer. This court finds this argument unpersuasive; nothing in the *Applied Digital* opinion suggests that its reasoning should be limited to actions for injunctive relief. Moreover, it would be inconsistent with the purpose of Section 14(e) to preclude an action for damages relating to pre-tender offer violations in cases where no tender offer was in fact made. Such a limitation of *Applied Digital* would have the effect of providing a safe harbor for target companies who were successful in their use of misstatements or deception to discourage the making of tender offers.

In summary, the court finds that plaintiffs have alleged conduct "in connection with" a tender offer under Section 14(e). *Santa Fe Industries, Inc. v. Green*

Defendants argue that the consolidated amended complaint alleges only breaches of fiduciary duty, and that the complaint fails to allege actionable deception under the principles of *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). In *Santa Fe Industries*, the Supreme Court held that a claim "states a cause of action under any part of Rule 10b–5 only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Id.* at 473–74, 97 S.Ct. at 1301. The principles of *Santa Fe Industries* apply to claims under Section 14(e) as well as Section 10(b). *Marshel v. AFW Fabric Corp.*, 441 F.Supp. 299, 300 (S.D.N.Y.1977); *Altman v. Knight*, 431 F.Supp. 309, 313–14 (S.D.N.Y.1977).

■ This court has recently recognized, however, that:

> The Court's holding in *Santa Fe Industries* makes a showing of manipulation or deception a requirement in a Rule 10b–5 action, but does not, as defendants seemingly maintain, bar all claims related to breaches of fiduciary duty under state law. As the Second Circuit explained in *Goldberg v. Meridor*, 567 F.2d 209, 221 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, [98 S.Ct. 1249, 55 L.Ed.2d 771] (1978), in *Santa Fe Industries* the Supreme Court was "drawing the line so as to require plaintiffs to make claims of nondisclosure or misleading disclosure, not as directing the lower courts to dismiss cases where it was claimed that fiduciaries had failed to disclose their self-dealing or had made a misleading disclosure." . . . Where, as here, breaches of fiduciary duty may also involve manipulation or deception, a plaintiff may advance claims under both Rule 10b–5 and state law.

*Jones v. National Distillers and Chemical Corp.*, 484 F.Supp. 679, 685, [Current] Fed. Sec.L.Rep. (CCH) ¶ 97,140, at 96,293–94 (S.D.N.Y. Oct. 10, 1979). These principles are equally applicable in the context of a Section 14(e) action.

■ In the case at hand, plaintiffs allege that defendants made misleading disclosures: 1) by announcing that the proposed tender offer price of $40 per share was inadequate; 2) by circulating a letter characterizing the proposed merger as "reckless," "illegal," and "improper"; and 3) by challenging the integrity and honesty of AMEXCO, as well as the legality of the proposed tender offer. In addition, plaintiffs allege that defendants failed to disclose that McGraw-Hill had previously advised AMEXCO that McGraw-Hill considered AMEXCO to be a proper and desirable merger partner. As plaintiffs have clearly made claims of both nondisclosure and misleading disclosure, the principles of *Santa Fe Industries* do not require dismissal of this case. While plaintiffs' claims may involve breaches of fiduciary duty, their claims involve nondisclosure and misleading disclosures as well. Thus, the alleged conduct of defendants can fairly be viewed as manipulative or deceptive within the meaning of Section 14(e).

Defendants cite a number of cases in which breaches of fiduciary duty were held not to be actionable under federal securities law. In particular, defendants refer to cases involving "bootstrap" allegations, that is, where plaintiffs allege failure to disclose an alleged breach of fiduciary duty. For example, in *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1084 (2d Cir. 1977), the Second Circuit stated that "violation of any such state-law fiduciary duties, including non-disclosure of conflict of interest or unfairness of a conversion price, will not support a claim of constructive fraud under § 14(a)." This court has recently noted, however, that "in *Brown*, as in other cases cited by defendants, the court addressed the situation where there was no deception or material misstatements or omission, and did not require dismissal of an action where plaintiff did allege deception or material misstatement or omission accompanying the alleged breach of fiduciary duty." *Jones v. National Distillers and Chemical Corp., supra*, 685,

[current] Fed.Sec.L.Rep. (CCH) ¶ 97,140 at 96,294. In the case at hand, plaintiff alleges a number of misstatements and omissions which are not of the "bootstrap" variety merely alleging failure to disclose a breach of fiduciary duty.

Defendants argue that the court's recent decision in *In re Sunshine Mining Co. Securities Litigation,* 496 F.Supp. 9, (S.D. N.Y.1979), is "virtually 'on all fours'" with the case at hand. In *Sunshine Mining,* the court held that the wrongful withholding of support for a proposed tender offer does not amount to a fraudulent, deceptive, or manipulative act or practice under the principles of *Santa Fe Industries.* The court explained that "[s]ince plaintiff's claim that approval of the tender offer was withheld by management for purely selfish reasons amounts to no more than a charge that Sunshine management acted unfairly and in breach of its fiduciary duties, plaintiff does not state a cause of action under the federal securities laws." At 11. In the case at hand, unlike in *Sunshine Mining,* plaintiff alleges misstatements and omissions actionable under Section 14(e). Thus, it is clear that neither *Santa Fe Industries* nor any of the other cases cited by defendants on this point require dismissal of the consolidated amended complaint.

*Causation and Reliance*

■■■ It is well-established that in a Section 14(e) action, plaintiffs "must show that there was a misrepresentation upon which the target corporation stockholders relied and that this was in fact the cause of [plaintiffs'] injury." *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 373 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). In the case at hand, it would appear that plaintiffs fail to allege that McGraw-Hill stockholders, or anyone else for that matter, in fact relied upon the alleged misrepresentations or omissions. While plaintiffs do allege deception on the part of defendants, plaintiffs do not allege that anyone was deceived or that anyone acted in reliance upon the alleged deception to their detriment. This court recently stressed the importance of alleging reliance and causation in the Section 10(b) context:

> [B]efore the court can ask "Was the conduct deceptive?", it must first ascertain "To whom?" Since a 10b–5 action requires a causal connection between the defendant's violation and the plaintiff's loss, the allegedly deceived observers will have to be persons who were in a position to make a decision that led to that loss.

*Klamberg v. Roth,* 473 F.Supp. 544, 550 (S.D.N.Y.1979) [footnote omitted].

In the case at hand, plaintiffs, as stockholders, were simply never in a position to make a decision that could lead to any loss. The only attempt to allege reliance or causation in the consolidated amended complaint is its allegation that:

> Had defendants provided its shareholders and the public with complete and truthful information about AMEXCO and its proposed tender offer (i. e., that $40 per share was a fair price; and that AMEXCO was a company with which defendants themselves had wanted to merge), the AMEXCO tender offer would have been consummated.

A similar allegation was held insufficient by this court in *Rediker v. Geon Industries, Inc.,* 464 F.Supp. 73 (S.D.N.Y.1978). In *Rediker,* the plaintiff alleged that the defendant executives of Geon had engaged in fraudulent activities as a result of which Burmah, an intended tendering party, had determined to desist from going forward with the deal. The court held:

> Plaintiff must show that there was a misrepresentation upon which she and other target shareholders relied and that this reliance was in fact the cause of their injury. . ., . The facts as alleged herein do not establish that Geon shareholders' reliance on the alleged misrepresentation was the cause of the shareholders' injury. Misdeeds by the defendants may have caused Burmah to abort the deal, and this, in turn, may have caused the market price of Geon to plummet and may have thereby injured plaintiffs. Thus, the alleged injury was caused by

the aborting of the deal and not by the shareholders' reliance on defendants' alleged misrepresentations. Plaintiff's remedies, if any, lie in state court for common law claims.

*Id.* at 82 (footnote and citations omitted). *See also Hundahl v. United Benefit Life Insurance Co.*, 465 F.Supp. 1349, 1366–70 (N.D.Tex.1979); *Halle & Stieglitz, Filor, Bullard Inc. v. Empress International, Ltd.*, 442 F.Supp. 217, 225 (D.Del.1977); *Altman v. Knight, supra*, 431 F.Supp. at 314.

█ Here, as in *Rediker*, plaintiff alleges that defendants have frustrated the consummation of a tender offer. Such a theory will not support a Section 14(e) action. Plaintiffs allege neither reliance on the part of stockholders nor reliance on the part of AMEXCO—in fact, any suggestion that AMEXCO withdrew its proposed tender offer in *reliance* upon the alleged McGraw-Hill misrepresentations and omissions would be absurd. Even assuming that misrepresentations or omissions thwarted the proposed AMEXCO tender offer, such an allegation would not give rise to a Section 14(e) violation. The situation is not unlike that in *Blue Chip Stamps v. Manor Drug Stores, supra*, where the Supreme Court held that fraudulent misrepresentations which prevented a "purchase" of a security from ever taking place did not give rise to a violation of Rule 10b–5.

█ Of course, this court recognizes that in many circumstances a presumption of reliance and causation may be triggered by a finding of materiality. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L:Ed.2d 741 (1972); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 375 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). In the case at hand, however, such a presumption would be totally inappropriate. As discussed above, not only have plaintiffs failed to allege reliance on the part of stockholders, but also the facts as alleged by plaintiffs present a situation in which reliance was virtually impossible. As no tender offer was ever actually made by AMEXCO to McGraw-Hill stockholders, these stockholders were never in a position to rely upon the alleged misstatements or omissions by McGraw-Hill. This is not to say that reliance upon pre-tender offer misstatements and omissions is precluded in all cases. This court holds, however, that plaintiffs' consolidated amended complaint must be dismissed for failure to allege reliance and causation in a manner sufficient to sustain its Section 14(e) claim.

*State Claim*

█ Upon dismissal of plaintiffs' federal claim, their state-law claim of breach of fiduciary duty also must be dismissed for lack of pendent jurisdiction. The Supreme Court has instructed that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *accord, Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1179 (2d Cir. 1974). "Pendent jurisdiction can be relied upon only where there is a claim conferring federal jurisdiction that will survive a motion to dismiss." *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975).

*Conclusion*

For the reasons stated above, defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim for which relief can be granted must be granted. Accordingly, it is not necessary for the court to address defendants' motion for a stay.

SO ORDERED.